OK, we're ready for argument on our next case, ABB, Inc. v. CSX Transportation. Mr. Young? Yes, thank you, Your Honor. Good morning. May it please the court, my name is Jeff Young. I'm counsel for the appellant in this case. I hope it doesn't reflect too poorly on me in that I find this to be an interesting case. I hope that doesn't reflect on my interests. And I also think it is one, not only as Amicus has pointed out, but I think it should be apparent from the briefing that it has implications beyond just this set of facts for the shippers and carriers who transport under the Carmack Amendment here in the United States. And in a nutshell, what I think is happening here is that, and perhaps it's commercially rational, but what I believe the CSX, the carrier in this case, is trying to do, and what the district court, Judge Fox, a very experienced judge, but I obviously disagree with his opinion here, endorsed, is the turning of a statute and a liability scheme on its head, essentially. One that was specifically set up by Congress to operate in a certain way. And as I indicated, and we'll explain in more detail, I believe the CSX is essentially trying to flip that in a way that Congress never intended or the statute does not endorse or even say in any way. I think it's apparent from the briefs that the issue here is whether a limitation of liability applied to a transport of a $1.3 million transformer. The CSX contends and was able to convince the district court that there was a $25,000 limit of liability on that transport. Just going to hit a few of the very important facts, not go through all of them. There aren't that many, and there really aren't any that are in dispute, which is why we're here on field from a motion for summary judgment. ABB manufactures transformers, among other things, has a factory in St. Louis. It's headquartered in Raleigh, North Carolina. We manufactured a transformer in our St. Louis facility for Duquesne Flight, Pittsburgh. And we arranged in March of 2006 to have the CSX haul that transformer. We did that by preparing a bill of lading that did not have a limitation of liability in it, didn't reference any specific CSX rate authority, and I'll get into why that was in a minute, and sent that over to the CSX. And the first key fact, very key fact, is that Brian Bruggeman, who is the transport supervisor for ABB, did, in fact, and the record's clear on this, on the Joint Appendix, page 230, try to talk to the CSX about rate authority. I think he said, I think his testimony was on several occasions. The district court missed that fact for whatever reason, and in fact, believes that the fact that Bruggeman didn't talk to the CSX is one of the two, I think, fundamental problems with the district court opinion. Well, why would that be important? Let me tell you what, the difficulty I have with your argument. And that deals with that section on the bill of lading. This is where your client says they're familiar with all the terms and conditions of it. This is their document. And with the tariff that governs the shipment, and that the terms and conditions are agreed to by the shipper. And the tariff said, we have a limitation of liability. Why isn't this a contractual agreement that takes it within the exception to the Carmack Amendment? All cases have things you'd like to be there. And I certainly, that's a fair point. But I think the response to that is far more compelling. And the response to that is that language, as I think is very apparent from the briefing, both sides agree refers to a regulatory scheme and a tariff scheme that has not been existent since the mid-'90s. The references in that standard form, very small print in the top right hand corner, talk about the Interstate Commerce Commission, tariffs. This isn't a tariff. This is a rate schedule. It's a price schedule. I don't know if there are cases that said that the term in the trade now stood for contract terms. I think there are several cases that talk about, there are more than several. There's a number of cases that talk about vestiges of that language still being in bills of lading years after the ICC went away. Most of them say all the same thing, that it's archaic, and that it really doesn't have a lot of import. There is one case, your honor, that talks about where it's readily apparent where the parties were going that will give import to that language. How high is that risk, though, on your client? I mean, it's their form. They came up with it. It's 20 years after the ICC is gone, and they're using that term. No, that's a fair point, your honor. But I think there is a good answer to that question. And the answer is, of everybody involved in that transaction, the one entity that should have known that that language didn't really mean anything anymore and should have just picked up the phone to call us to say, hey, what do you really want here, is the CSX. They're a carrier. They know better than anybody in this room that that language doesn't mean anything anymore. Why would the burden be on them, though, to do the legal work on your form? Because I believe Congress made that decision. Congress said the burden is on the carrier to prove that there was an express agreement, that differing rates were offered at different levels of liability, and that an express written agreement memorializing a decision by a shipper to accept a limited liability, a clear one, shows up on the document. And to the extent that there was any lack of clarity, again, the one entity in the room that should have known the best that that language was ineffective because it referred to a statutory regulatory scheme from 17 years ago now was the CSX. So your position, then, essentially comes down to the statutory framework of the Carmack Amendment. You're saying that the full liability is on the carrier unless there isn't a plainly stated exception by written declaration of the shipper or by a written agreement between the shipper and the carrier. So you're saying that the written agreement has to establish a price, as opposed to just saying the parties agree there is an agreement? Is that what you're saying? I think that the burden is on, I think the cases and the statute are very clear on this. The burden is on the carrier to show that the shipper had a fair opportunity to select between rates, number one, and number two, that that agreement, whatever the shipper and the carrier decide, then shows up in the document. And what the record in this case shows is that the person at ABB responsible for trying to make sure that they had a clear understanding with CSX tried to call the CSX to resolve this issue several times and couldn't get any answer out of it. It seems to me you have to be relying, then, on the language in the Carmack Amendment that requires a value, a statement of value, and that there is no statement of value. Yes, Your Honor, I agree that. I mean, there certainly is nothing in the record that shows that there was a statement of value assigned to a particular level of liability and then a price rate. That's never happened in this case. What should have been put in there wouldn't the rate be based on weight as opposed to value? That is, as I understand it, that's how, if the form had been filled out correctly, that's right. The CSX would have originally calculated the base rate based on weight. Then the next step is the CSX should have, under the law, said you have two options here. Option one is you can ship it at $15,000 and a $25,000 liability, or you could have shipped it at $25,000 and unlimited liability. It's that second step that never happened in this case. So the counsel for CSX is going to say, well, we didn't see any need to do that because you sent us your contract form that you signed, and you said on that form you knew what the terms were, and you agreed to them. Part of those terms was $25,000 limit. Again, Your Honor, that's a fair point. I think that, as you see in the case law, there's a lot of cases out there that involve this vestigial language. It still exists out there in bills of lading, documents going back and forth between carriers and shippers. I don't think, though, that Congress intended, or that the Carmack Amendment endorses, or that the case has endorsed, the use of that language to override what the rest of the Carmack Amendment says. Because, again, if that language said, ABB, Isn't there an easy fix for this? You just change your form. Well, I think the easier fix would have been for the CSX to answer the telephone call. Well, I assume they're going to say, we didn't see any need to have any further communication because you told us in writing you know what everything meant. Well, I mean, maybe they could say that, but that's not in the record, Your Honor. In fact, there's nothing in the record from the CSX from anybody on the CSX side at the time that the agreement was reached to transport the transform. There's nothing in the record about that. All we see in the record is a fellow at ABB filling out a form because he has to, essentially, because the CSX won't respond unless you do, sending it in and then calling them to try to get a rate quote and not getting a rate quote. The problem here is there's no way to split the baby in this case. It's either one way or it's the other way. Absolutely. I mean, both sides, from my point of view, are egregious in handling this thing. First of all, from your shipper, I mean, your man, Brueggemann, why should he let a $1.3 million piece of a transformer get put on a train without knowing what the insurance or rate liability is? I think he was fairly new on the job. That's not an excuse, but I'm sure he would and does do it differently now. And on the other hand, CSX, it appears they're sitting on their hands. Now, will they have a right to do that? I don't know. Well, I think that answers the question, Your Honor. Between the two sides who could have handled this better, the law says the burden is on the carrier. This is a narrow exception to the idea that there should be full liability on the CARMAC amendment. And the law is very clear on this. The exception is limited, and the burden is on the carrier to prove there was an express agreement. And to the extent there was confusion, I have a very clear record that says, we did try to clear it up. And what I don't see in the record anywhere, it's not in there, is the CSX doing anything to clear it up other than just sitting there quietly. Well, I mean, in general terms in contract law, ambiguity is construed against the draft of the document. It's your bill of lading. And I understand that, Your Honor. And the district court obviously latched onto that and used that. But I think here the statutory scheme should trump that rule of construction. Because the statutory scheme, again, says very clearly it's up to the carrier to get and prove an express limited liability. Because, again, this is against public policy. We're not supposed to have these things unless there's an express agreement to it. Talk to me just a minute about your consent judgment. Do I read that as a hollow agreement? To be fair, yes. OK. So again, it's either one way or it's the other way. That's correct. I mean, counsel for CSX and myself have worked very well on this case. We came up with that. Judge Fox endorsed it. And yes, because this issue was such an on-off switch, we felt like this was the best way to resolve this issue instead of having a trial over $25,000 and then doing it again if this court decided to limit liability in the plot. Where I was headed with that, I woke up in the middle of the night thinking about that. I went back and re-read it. But for that high-low language in there, we probably wouldn't have any case and controversy in this case. There's probably enough there to say there is. Yes. Yeah, I mean, I don't know if the amount we've claimed is in the record. I'll certainly answer that question. But it's significantly higher than $25,000, obviously. So you all have done your own derivative hedging in this case. We've come up with what I think is the best way of approaching this issue that's in the best interest of the trial court and us. And Judge Fox seemed to agree with us. I'd like to reserve the remaining time for rebuttal. Thank you, Your Honor. Thank you very much. Thank you. Thank you. We'll hear argument from Mr. Hillenbrand. Good morning. If it please the court, my name is Hyman Hillenbrand, and I represent CSX Transportation in this lawsuit. ABB and the amicus brief spend a significant amount of brief pages discussing provisions in the Interstate Commerce Act. And I'd just like to clarify a few points. In 1980, Congress passed the Staggers Rail Act. The Staggers Rail Act set up three types of transportation. They passed the Staggers Rail Act because many of this nation's rail carriers were in bankruptcy. A few had gone out of business, and a few that were in business and not in bankruptcy were near bankruptcy. Congress came up with a miraculous idea to try to fix the railroads. Why don't we let the shippers in this country negotiate with the railroads contracts, terms and conditions, instead of what the ICC prescribed they had to do, and the Interstate Commerce Act didn't give them a choice to do? So Congress passed the Staggers Rail Act. It set up three different types of transportation. One, contract transportation under 10709, which we believe this is what happened in this case. Then it set up exempt transportation because the ICC had started to exempt many areas of transportation that were under regulation. The only difference between the contract section and the exempt section was that they had to offer on exempt shipments the shippers a opportunity to get CARMEC liability. And the third was traditional liability on the bill of lading contract tied into the CARMEC amendment. By 1995, this miraculous idea of letting shippers and railroads negotiate the terms of the contract had breathed new life into the nation's railroads. And the need for the ICC as a regulatory body diminished to the point with Congress decided that they would scuttle the ICC and let the railroads and the shippers negotiate transportation contracts. Now, if you take a look at the deposition testimony of Craig Steffi, who was the traffic manager of ABB for 20 years and left that position approximately eight months before this claim arose. In 20 years, there was never a dispute between CSXT and ABB concerning whether a shipment was made at limited liability or full liability. But those weren't operating under your priceless 4605. That didn't come into effect until December 05. Well, let me finish my question. Don't you have in making your course of dealing argument that the parties were familiar with 4605, had dealt under 4605. Don't you have to show that you actually do have a bill of lading that ABB? I couldn't find one in the record that ABB had previously shipped under priceless 4605. You don't have to show that? I don't think so. Because the course of dealing we're talking about was the negotiation of what type of transportation services they want. 4605 is just the most recent version of various priceless that had been in effect for 20 years. By the year 2000, all railroads in the United States went to base rate viability. That is, their tariffs, exempt circulars, priceless, classifications, whatever you want to call it, it's all the same thing. In fact, everybody still refers to what priceless as a tariff, even though it doesn't say tariff on it. There were tariffs before that, priceless before that. They had different numbers. OK, when the judge is speaking, you have to stop. But what you're seeking to do in this case is to enlarge the concept of course of dealing to cover a priceless that they knew nothing about. See, that's what I'm struggling with here. I don't see any of it's in this record that shows that they knew about the priceless to which you're trying to hold them liable. And doesn't the Carmack Amendment impose the burden on the carrier to create the exception to full liability? When Congress abolished the ICC, it put in a new section into the Interstate Commerce Act. It gave the shippers the right to write the railroad or electronically notify the railroad that it wanted all of the terms and conditions of the applicable tariff, priceless, whatever it is. Answer in this case, though. I think it would be helpful. I'm answering in this case. So the question is, who had the obligation and the duty to get the information if there is a new priceless in effect? Now, based upon the fact that this new priceless was in effect, if ABB called the railroad and asked, they said they want to do this shipment, after all, six months before this shipment ever left. They did call the railroad. There's testimony throughout the record that they called the railroad. They weren't able to get a rate. They called the service. They talked with the service people. No, no, no. That's not correct in the record. I beg to differ with your honor. The record indicates that Brian Brueggemann's. They talked with the clearance bureau people. You're saying that that didn't occur? They didn't say that. You're saying that's not in the record? The clearance bureau people are people who come and measure the rail car. Brueggemann testified that he asked, and he didn't say which railroad because he ships with five different railroads. He didn't say which railroad. He didn't say on this shipment. He said he would talk to the people who come and measure the car and ask them if they could get information for him concerning. And then he said that he checked online and he couldn't find the information. That's in the record, isn't it? No, he said that he went online and he looked at a lot of things in CSX record. And what he said was is that he could not remember if he saw a price list. That's what he said. Reread Brueggemann's testimony. Do you have a record site for that? Not out of my back pocket, but you can reread Brueggemann's testimony. It's very clear. Now back to the- Why don't you send us, after an oral argument, you can send a letter to the court that identifies the page in the joint appendix where you believe that that language appears. OK. So Brueggemann said that when he spoke to these unnamed, unknown people who supposedly came and measured the car, and he said he would like to get information about the terms under which he would be shipping this transformer, which occurred probably a month before he actually shipped the transformer. He said that sometimes they would give him information and sometimes they would not. Get the information for him. So after a week or several days, he doesn't get information. He has under the statute a right to send a letter and say, I want the information. He said he printed out a bill of lading and he couldn't put in a declared value in the box because it was blocked. But what did he do after he filled out the bill of lading in this case? With his certification, with a certification on it, that he was familiar with the terms of service and the rates, he then prints out the bill of lading and he faxes it to CSXT without the declared value box being filled in. What was to prevent him with pulling out his trusty ball  of $100,000 in each and every declared value box that was on his bill of lading that the computer wouldn't print and then faxing to CSX? So if you've established that Mr. Brueggemann is somewhat incompetent, that doesn't really answer the statutory question, does it? Mr. Brueggemann did say, I looked all over the website. I tried to find a lot of different things. I don't remember seeing a price list that they made available on their website. That's what I think you're referring to somewhat inaccurately. So let's just say ABB has an incompetent employee doing this transaction. Does that then create an exception under the Carmack amendment, assignment of full liability to the carrier? Because they have an incompetent employee who hasn't done all his due diligence and didn't know about a price list and still shipped when the amendment says that you have to specify? Over a four-year period on documents produced by ABB of prior bills of lading, when they Under that price list, though. Wait a second. Look. I understand, you have to understand, they didn't produce, they produced nine CSXT bills of lading. And how many times did they ask for full liability of those nine? Once. With all the nation's railroads. Excuse me, you're talking over me again, sir. I don't know where you ordinarily come to court, but. I apologize. OK, but when they did ask for full liability, that was in 2001, maybe, or 2003. It was well before this. There's no evidence of what the price list provided or anything. So do we just have to extrapolate that because they asked for it one time several years before, they should have known this time? Craig Steffi spent six months teaching Brian Brueggemann his job. Craig Steffi was still in the business. If Brian is still in that building, still working for ABB. As a company, ABB knew what to do, even if Brian Brueggemann didn't. Now, Brian Brueggemann. Was there any evidence here that Craig Steffi knew about price list 4605? But Craig Steffi knew how to find out the price. Is there any evidence here that Craig Steffi was familiar with price list 4605? There's no evidence on the record one way or another. However, Craig Steffi said that in his 20 years, when he wanted full liability, he always got it done. He always called the railroad. Did Brian Brueggemann called the railroad? The answer is no. Did Brian Brueggemann write a letter to the railroad? The answer is no. OK, we're not going to have one of the judges speaking. You need to stop. I'm sorry. I apologize again. I get too into it. So did Craig Steffi call, did Craig Steffi send when he faxed the letter requesting the clearance file be opened up? Did he put in that letter, oh, by the way, I'd like you to send me the information on how to get full liability on this shipment? The answer is no. Did Craig Steffi sign, prepare a bill of lading? And we have cited the cases that say when the shipper prepares a bill of lading, the court does not have to protect the shipper from itself. In mechanical technology versus Ryder, there was a tariff. They said they didn't know about the tariff. Was that a published tariff case? Yes, that was a published tariff case. And you don't find that distinguishable? Yes, I do find it distinguishable. Because even though in substitution for filed tariffs, which in Washington DC, which most shippers did not know the terms and conditions of, they had now a right to write the railroad. And the railroad had an obligation to respond and give them all the information so that they would know what they were doing. And what was Craig Steffi teaching Brian Brueggemann for six months how to do his job? There's no evidence on that. But Brian Brueggemann said he was able in every case, no matter what change in conditions. And if you looked at all of the bills of lading, there are always different new priceless or tariffs or exempt circulars dealing with all of the railroads. So it was always changing. They knew that as a company. They knew on every shipment they had to call. Now, it's a two-part play. It's a two-part play because of the situation that if you put on the bill of lading $1,500,000 as a declared value, do you get that value? No, you also have to agree to pay the higher rate. ABB is accompanying you that. In fact, Brian Brueggemann. There's no bill of lading that says anything about a higher rate, is there? Not on their bill of lading form, but as a company. There's no written declaration that addresses that issue between the parties, is there? But that's one of the two ways you get full liability. Under the Carmack Amendment, you declare a value that you're willing to pay the higher rate for. But you also have to agree to pay the higher rate. Steffi, in every case, agreed to pay the higher rate when he wrote full liability required on the bill of lading. But Steffi was not allowed, and he did not have the authority to buy higher liability. Why didn't he have the authority? Because once he got the rate for full liability, he had to go to his risk management department. They contacted their insurance company, and the insurance company gave a bid as to what they would charge for liability. If the combination of the real base rate liability and full liability was more in the quote that they gave Steffi, was more than in that situation, ABB shipped at base rate liability. You're just arguing past facts, Mr. Hill and Brandon. That's not terribly helpful. What I'm trying to do is extrapolate your principles that you're trying to put before this court based on this litany of facts that you're laying out in front of us. And as I understand it, and tell me if I'm wrong then, you're saying that Mr. Steffi's prior course of dealing with CSX is sufficient to establish a course of dealing creating an exception to the written declaration and written agreement exception to the Carmack Amendment full liability provision. Is that your case? Yes, but it's only part of the case. OK. Because it's also the cert that what was- Well, tie in your argument to the legal principles rather than simply recite the record, because we are familiar with the record. I realize that. The legal principles are this. There's nowhere in the Carmack Amendment that says the railroad has to first give full liability choice to the shipper. All the nation's railroads since the year 2000 have used base rate liability. And their customers have always, when they abolished the ICC, Congress established a Surface Transportation Board. There's never been a complaint on behalf of the shipping public in the United States to the Surface Transportation Board that base rate liability is not enforceable under the Carmack Amendment. So there's nothing in the Carmack Amendment. The Carmack Amendment sets out at the beginning what a railroad's liability is. And then it sets out how- Contractual loss. What contractual law is, what the parties can do under the contract. They can either get higher liability than base rate liability by declaring a value on the bill of lading. Number one. Did he do that? No. Did he try to do that? Yes. He said he couldn't do that. And what he said is he didn't have to do that. Because in his mind, he said, in his mind, he thought if he put in the product value on the bill of lading, then he would be able to buy full liability without paying any more money. But isn't that one of the base pillars of your argument that he had constructive knowledge of this rate? In effect, because he certified that he knew it on his own bill of lading. Well, he certified he knew about a tariff. Yes. But a tariff is just another name for whatever it is. Even the court below said Steffi referred to him a tariff. Joe McCauley referred to him as tariffs. And everybody in transportation today still refers to them as tariffs. Because what is a tariff? But I think that, I guess my problem is that these rates are always changing. The price lists, new price lists come and go. And I thought the purpose of the Carmack Amendment was to say the parties have to, there needs to be specificity. In order to remove the carrier from full liability, there has to be specificity. We don't have specificity here. I think you do, based upon the terms of the AB bill of lading. If there was any ambiguity, it's construed against them. I don't think it was ambiguous. Does the Carmack Amendment say you construe the lack of specificity against the shipper? I don't know. No, it doesn't say it's construed against the carrier either. So you're getting away from the statute then and going to general contract principles. That's correct. Because under basic contract principles, when CS. So the statute doesn't help you in that respect. Well, it doesn't hurt. You don't get support for your position at all in the statute. You have to go to. It doesn't hurt a position either. Because it provides that the. Requires full liability except a written agreement as to the liability of the rail carrier. Well, that was the issue in this case. Exactly. Whether there was a written agreement. A bill of lading is a contract. It was a written agreement. Under the tariff or price list or whatever it's called, it's all the same. It's just a different name. And when they sent facts that to CSX, CSX and Joe McCauley so testified in his testimony was undisputed that based upon that bill of lading contract between CSX and ABB, CSX would regard that as an order to purchase the base rate liability. There's nothing in there that said full liability required. If he had done just that, he had looked up the old bills of lading and typed in full liability required, he would have gotten a call back and said, listen, you don't have a rate for full liability on your bill of lading. Mr. Pillerman, you've answered my question. Thank you. Thank you very much. Your time has expired. Thank you. Thank you. I apologize to the court. Thank you. Mr. Young, you have some time in rebuttal. Mr. Young, let me get you started. I'm trying to distill the legal principles here. And it seems to me that Mr. Hillenbrand's case is coming down to the Carmack exception. He's saying, well, we have stated there was an agreement. The parties had an agreement as to liability as evidenced by the provision in the bill of lading. And he's saying that even if they didn't have that agreement, the general contract principles kick in, rather than the Carmack amendment holding them to a specificity level, apparently originally contemplated under the statute. So can we swing into general contract principles or not? Or are we limited to the text of the amendment? I think there's very limited case law that talks about the course of dealing. But the courses of dealing that you see in that case law always involve a situation where either there was a filed tariff, as you indicated during the ICC days, or there's one or two cases, I believe Siren is one of them that the district court relied on, where the shipper, perhaps unknowingly, actually put a piece of rate authority or a reference to rate authority in the document but didn't really know what he was doing when he did it. And that's not what happened here. If Brian Brueggemann had written rate authority CSX 4605 in that bill of lading without knowing what it was, I wouldn't be here. But that's not what happened. So I think the answer to your question, Your Honor, is in very limited circumstances, a course of dealing can come in. But the cases are very different from this one. Because the course of dealing always is, somehow, some way, a limitation of liability got into the document between the parties. And does that answer your question, Your Honor? Yes. Yes. Thank you. So the short answer would be that your reading of the Carmack Amendment is basically that Mr. Brueggemann's negligence, stupidity, whatever you want to call it, cannot be held against him under the Carmack Amendment. No. I think if it had risen to a higher level, it could have been. Which is, if he had written 4605 on the bill of lading without knowing what it was, then there's a problem. As it was, what he did was he did, in fact, he did exactly what Mr. Hillibrand said he didn't do. He did, in fact, write $1,300,000, I think that was the value of the transformer, on the bill of lading when he couldn't get it in the box. So even though that's not technically required under the Carmack Amendment to get full liability, he did try to alert the CSX of that. So I just don't see a level of culpability sufficient to divest ABB of all of its statutory protections in this case, simply because he maybe didn't do it perfectly. I think I heard you say that the course of dealing must show that the shipper had knowledge of the liability. No, I didn't say that. No, you didn't. OK. What I said is if he had unknowingly put in 4605 in that bill of lading, not knowing there was a $2,500. He would still be stuck. He would be stuck. We wouldn't be here. But that's not what he did. And Your Honor, just to answer a question you asked of Mr. Hillibrand, it's the joint appendix. It's pages 235 and 230. Right behind it. Thank you. OK. Thank you. I think you heard it at the end of Mr. Hillibrand's argument. They are, in my opinion, trying to change the law via practice, essentially, and take away what is the statutory scheme. And the statutory scheme is if the bill of lading is silent, has nothing on it, you don't have to write full liability. You don't have to write anything on the bill of lading to get full liability for actual loss. And what you're hearing from the CSX is they want to sit back and wait for shippers to ask for things, and wait for shippers to confirm agreements, and then wait for a shipper to prove what the deal was. And that's not how the Carmack Amendment is supposed to operate. Any further questions? Thank you, Your Honor. Appreciate it. We'll ask the clerk to adjourn court. And the panel will come down and greet counsel. This honorable court is adjourned until tomorrow morning at 8.30. God save the United States and this honorable court.
judges: G. Steven Agee, Barbara Milano Keenan, Henry F. Floyd